# EXHIBIT A

## Allegheny County Department Of Court Records

### Civil/Family Division Docket Report

**Run Date and Time: 12/23/2021 - 11:36:14**

| GD-21-013752 | |
|---|---|
| | **Jordan vs Petco Health and Wellness Company Inc.** |

**Filing Date:**
11/8/2021

**Related Cases:**

**Consolidated Cases:**

**Judge:**
No Judge

**Amount In Dispute:**
$ 0

**Case Type:**
Other Tort

**Court Type:**
General Docket

**Current Status:**
Sheriff Return

**Jury Requested:**
J

### --Parties--

| LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|---|---|---|---|---|---|---|
| Jordan | Noah | R. | Plaintiff | 5445 Fair Oaks Street Pittsburgh PA 15217 | -- | Frank G Salpietro |
| Petco Health & Wellness Company Inc. | | | Defendant | | 11/24/2021 1107 | --    Top |

### --Attorney--

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| Salpietro | Frank | G | Plaintiff's Attorney | 310 Grant Street Third Floor Pittsburgh PA 15219 | 4123381185 |

### --Non Litigants--

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| No Litigants Found | | | | | |

| | | --Docket Entries-- | | |
|---|---|---|---|---|
| **Filing Date** | **Docket Type** | **Docket Text** | | **Filing Party** |
| 11/24/2021 | Sheriff Return | Petco Health & Wellness Company Inc. was served with Complaint on 11/24/2021 by Served - Manager / other person authorized to accept deliveries of United States Mail. AMANDA MCFARLAND | | Noah Jordan R. |
| 11/8/2021 | Complaint | | | Noah Jordan R. |

| --Alias Information-- | | |
|---|---|---|
| Petco tdba | | |

| --Judgments Against-- | | |
|---|---|---|
| **Name** | **Amount** | **Satisfied(Y,N)** |
| No Judgments Found | | |

| --Events Schedule-- | | |
|---|---|---|
| **Event Scheduled** | **Event Date & Time** | **Room Number** | **Judge/Hearing Officer** |
| No Information Found | | | |

Top

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| NOAH R. JORDAN, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC., t/d/b/a PETCO,<br><br>Defendant. | CIVIL ACTION – CLASS ACTION<br><br>No. GD-21-013752<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Filed on behalf of Plaintiffs:<br>Counsel of Record for these Parties:<br><br>Frank G. Salpietro, Esquire<br>Pa. I.D. No. 47154<br><br>Rothman Gordon, P.C.<br>Firm I.D. 010<br>310 Grant Street – Third Floor<br>Pittsburgh, PA 15219<br>(412) 338-1185 (telephone)<br>(412) 246-1785 (facsimile)<br>fgsalpietro@rothmangordon.com |

2021 NOV -8 PM 2: 33

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| NOAH R. JORDAN, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC., t/d/b/a PETCO,<br><br>Defendant. | CIVIL ACTION – CLASS ACTION<br><br>No. _____ |

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally, or by attorney, and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint, or for any other claim or relief requested by the Plaintiffs(s). You may lose money, or property, or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**LAWYER REFERRAL SERVICE**
**The Allegheny County Bar Association**
**11th Floor Koppers Building**
**435 Seventh Avenue**
**Pittsburgh, PA 15219**
**Telephone: (412) 261-5555**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

NOAH R. JORDAN, on behalf of himself
and all others similarly situated,

Plaintiffs,

v.

PETCO HEALTH AND WELLNESS
COMPANY, INC., t/d/b/a PETCO,

Defendant.

CIVIL ACTION – CLASS ACTION

No. _____

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Noah R. Jordan ("Plaintiff Jordan"), on behalf of himself and all others similarly situated, who by and through their undersigned counsel make the following claims against Defendant Petco Health and Wellness Company, Inc., t/d/b/a Petco ("Petco"):

1.  Plaintiff Jordan is a resident of the Commonwealth of Pennsylvania, residing at 5445 Fair Oaks Street, Pittsburgh, PA 15217. He brings this action on behalf of himself and all others similarly situated, as more fully set forth under the heading "Class Action Allegations" below.

2.  Defendant Petco is a publicly-traded, multi-billion dollar Delaware Corporation, with over 1,500 stores, including at least 44 stores in the Commonwealth of Pennsylvania.

3.  While the precise number is not yet known, Plaintiff Jordan believes and therefore avers, subject to further discovery that Defendant Petco engages in thousands

of transactions in the Commonwealth of Pennsylvania which involve discounts, rebates, and store or manufacturer's coupons, which are reflected on cash register tapes and stored in Petco's point-of-sale ("POS") and data warehouse systems.

4.    Plaintiff Jordan has shopped at Petco stores in the Commonwealth of Pennsylvania on numerous occasions.   For example, on June 25, 2021, Plaintiff purchased a 35-pound bag of Hills Science Diet Adult Dog Food at the Petco store located at 590 East Waterfront Drive, in Homestead, Pennsylvania.   At the time of purchase, Plaintiff Jordan presented to the cashier a $5.00 manufacturer's coupon, along with a $9.00 Petco "Pals Rewards" discount coupon. The receipt, attached hereto as **Exhibit 1**, documents the purchase of the item and Petco's acceptance of the coupons.

5.    Plaintiff Jordan's receipt clearly sets forth both a description of the item purchased, and the product's universal product code or item code (hereinafter collectively referred to as the "UPC") that was read electronically by Petco's POS scanner, which also acts as a cash register.

6.    The two coupons presented by Plaintiff Jordan were also read electronically by the scanner/cash register.  The receipt plainly sets forth, as separate line items, the terms "coupon" and "Pals DSC" (Discount).  The receipt further sets forth, immediately below the original purchase price and the two coupons, a new purchase price of the item after application of the coupons.

2

7.     Plaintiff Jordan was charged sales tax of $4.47 on the sale, representing a 6% sales tax payable to the Commonwealth of Pennsylvania, and a 1% sales tax payable to Allegheny County, a political subdivision of the Commonwealth.

8.     Petco's computation of sales tax did not take into account reduction of the purchase price or sales price attributable to the coupons.  The $4.47 sales tax amount was determined by multiplying 0.07 times the original sales price of the dog food – $63.95 – even though Plaintiff Jordan's purchase price for the dog food was only $49.99.

9.     72 P.S. § 7202 provides that sales tax is imposed upon each separate sale of tangible personal property within the Commonwealth of Pennsylvania equal to 6% (7% in Allegheny County and 8% in Philadelphia) of the "purchase price," which is to be collected by the vendor from the purchaser.

10.     The regulations promulgated by the Pennsylvania Department of Revenue specifically exclude the amount of discounts attributable to coupons from the imposition of sales tax if both the item purchased and the coupon itself are described on the cash register tape.   In particular, Section 33.2(b)(2) of the Pennsylvania Department of Revenue Tax Regulations provides, in its relevant part:

> Amounts which are excluded from the taxable portion or purchase price, if separately stated and identified, include:
>
> . . .
>
> (2) Discounts.  Amounts representing on-the-spot cash discounts, employee discounts, volume discounts, **store discounts such as "buy one, get one free," wholesaler's or trade discounts, rebates and store or manufacturer's coupons** shall establish a new purchase price if both the

3

> item and the coupon are described on the invoice or cash
> register tape.

Pa. Reg. Sec. 33.2(b)(2) (emphasis added).

11.     In its Pennsylvania February/March 2005 Tax Update, which is publicly
available, the Pennsylvania Department of Revenue clarified questions that had been
raised by the regulations by stating the following:

> The regulations **require** a retailer to deduct the coupon
> amount from the taxable portion of the purchase price, if the
> cash register receipt describes both the item purchased and
> the coupon that applies to it.  The description requirement
> ensures that a coupon relating to a nontaxable item will not
> reduce the taxable purchase price.  It also protects the
> retailer by showing why the taxable price was reduced.

12.     On Plaintiff Jordan's June 25, 2021 receipt, Petco clearly and
unequivocally described the item Plaintiff Jordan purchased, as well as the coupons that
applied to the purchase.  Petco linked the item that Plaintiff Jordan purchased to the two
coupons that applied to the item.  It is believed Petco's POS and data warehouse
systems verify valid coupons by identifying, by UPC or product code, whether the
tendered coupon relates to the item's UPC code.

13.     Petco was required, but failed, to deduct the amount of the coupons
tendered from the taxable portion of Plaintiff Jordan's purchase price.  It is believed and
therefore averred that Petco has acted in similar fashion with respect to "Pals Rewards"
coupons, as well as manufacturer's coupons.

14.     It was only after Plaintiff Jordan relinquished his coupons to Petco,
tendered his payment, and Petco accepted the payment, that Plaintiff Jordan received

4

his receipt which identified the sales tax Petco purported to charge. The improper collection of excessive purchase price was not discovered until after the purchase was completed and Plaintiff Jordan had left the store and used the product he purchased.

15.     It is believed and therefore averred that Petco overcharges, continues to overcharge, and has in the past overcharged sales tax to Pennsylvania consumers in violation of Pennsylvania Tax Law, Regulations, and Guidance.

16.     Further, it is believed and therefore averred that this conduct was occurring prior to August 1, 2016. As such, Petco benefitted from these overcharges during that time by being paid a "commission" of 1% of the excess purchase price improperly charged under the guise of a sales tax, by virtue of the version of 72 P.S. § 7227 in force at that time.

17.     In addition to the clear directives of the Pennsylvania Department of Revenue, as set forth in Paragraphs 10 and 11 above, the Pennsylvania Department of Revenue's Board of Appeals has already provided guidance and an adjudication on the issue. For example:

> (a)     A Petition was filed with the Department's Board of Appeals on or about February 16, 2015, seeking a refund of $0.21 for the improper collection of purchase price under the guise of sales tax by a retailer in Allegheny County for the purchase of a consumer product using a manufacturer's coupon. A copy of the Petition filed is attached hereto as **Exhibit 2**.

> (b)     On March 25, 2015, the Department's Board of Appeals entered a Decision and Order, finding that the retailer's collection of sales tax on the original purchase price of an item, without first adjusting the purchase price by deducting any coupons or discounts, was improper. A copy of the Decision and Order entered by the Board of Appeals is attached hereto as **Exhibit 3**.

(c)  Despite the opportunity to appeal the Decision and Order, neither the Department of Revenue or the retailer filed an appeal, rendering the Decision and Order final and binding.

(d)  The Petitioner in the above matter then received a refund from the Department of Revenue, confirming that coupons and discounts must be deducted from the purchase price before calculating sales tax.

(e)  The Petitioner was then permitted to proceed with court claims against the retailer for claims that could not be granted by the Department of Revenue's refund process. *See Farneth v. Wal-Mart Stores, Inc.,* GD-13-11472.

18.    The tax statutes, regulations, and guidance upon which the Board of Appeals based this decision have not been amended, and remain in force as they existed at the time of the Decision and Order referenced in Paragraph 17 above.

19.    The extent of improper overcharges are believed and therefore averred to be significant, but the exact scope of the overcharges is not yet known, pending further discovery.  However, it is believed and therefore averred that Defendant Petco, through its sophisticated POS system and data warehouse system, has the capability of identifying, among other things, the number of transactions where coupons were used, the amount converted through the improper collection of funds under the guise of sales tax charged without first deducting the value of the coupons, and in all cases where a consumer class member used a Pals Rewards card/number or a form of payment other than cash, the identity of the affected class member.

## COUNT I
## (Conversion and Misappropriation)

20.     Paragraphs 1 through 19 above are incorporated herein by reference as if fully set forth.

21.     By its improper conduct, Defendant Petco has converted and/or misappropriated funds belonging to Plaintiff Jordan and the other members of the Class in an amount not yet known, but believed to exceed at least a million dollars.

22.     The conversion and misappropriation of these funds is illegal, unjustified, and intentional, insofar as it is believed and therefore averred that Defendant Petco had actual knowledge of the sales tax exemption pursuant to the statute and regulations, given that Defendant Petco operates at least 44 stores in the Commonwealth of Pennsylvania.

23.     Alternatively, if the conversion and/or misappropriation was not deliberate, it is the result of gross negligence on the part of Defendant Petco.

24.     Regardless of motive, conversion is a tort of strict liability in this Commonwealth.

25.     Further, it is believed and therefore averred that during a portion of the time relevant to this matter, Defendant Petco benefited from these overcharges since it was entitled to receive a kick-back or commission equal to 1% of taxes improperly charged by virtue of Section 7227 of the Pennsylvania Tax Code, 72 P.S. § 7227.

26.     This conversion and misappropriation of Class Members' funds substantially benefited and continues to benefit Defendant Petco, while acting to the severe pecuniary disadvantage of Plaintiff Jordan and the consumer Class Members.

7

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, respectfully demands judgment in their favor and against Defendant Petco in an amount exceeding the arbitration limits of this Court (with a specific amount to be determined at a later date), plus interest, punitive damages, costs and attorneys' fees.

## COUNT II
### (Breach of Constructive Trust or Agency)

27.    Paragraphs 1 through 26 above are incorporated herein by reference as if fully set forth.

28.    Defendant Petco received money from the taxpayer Class Members in the form of an increased purchase price under the guise of collecting funds to be applied to a particular purpose, *i.e.*, the payment (albeit improperly collected) of sales taxes. *See* 72 P.S. §§ 7201(g)(1), 7202(a).

29.    The payments collected by Defendant Petco from Class Members for this purpose created and continue to create a constructive trust and/or agency, with Defendant Petco serving, at a minimum, as a trustee and agent for the Class Members for purposes of insuring that the funds collected from them are/were paid to the proper payee.

30.    Defendant Petco either improperly retained the constructive trust or agency funds, in which case it has been unjustly enriched, or alternatively, improperly paid the trust or agency funds to a third party (*i.e.*, the Pennsylvania Department of Revenue) which, by its own acknowledgement, was not entitled to receive those funds.

31.    Whether Defendant Petco obtained the funds subject to the constructive trust or agency from Class Members intentionally, or through a mistaken belief or

8

assumption that taxes were payable, sales taxes on the value of coupons or discounts are <u>not</u> properly collectable or payable, either in fact or in law, and the funds paid by Class Members are recoverable from Defendant Petco, which breached its duties and obligations to the Class Members as trustee or agent, by failing to remit the funds to the proper payees (*i.e.*, the Class Members).

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, respectfully demands a judgment and decree against Defendant Petco as follows:

(a)   That the Court determine and decree that Defendant Petco is a trustee and/or agent of the Class Members when collecting or purporting to collect sales tax, and that all funds paid by Class Members to Defendant Petco under the guise of "sales tax" on the purchase price of coupons or discounts were and are subject to a constructive trust or agency in favor of the Class Members, with Defendant Petco as trustee or agent;

(b)   That the Court determine and decree that Defendant Petco failed to pay the funds held pursuant to the constructive trust or agency, as set forth in this Complaint, to the proper payees, *i.e.*, the Class Members;

(c)   That the Court determine and decree that to the extent Defendant Petco collected or retained the funds held in constructive trust or agency for the Class Members, that said Defendant has breached its duties as trustee and/or agent;

(d)   That the Court determine and decree that to the extent Defendant Petco paid the funds held in constructive trust or agency to third parties not entitled to receive the funds (whether in fact or in law), then Defendant Petco breached its duties and obligations as trustee or agent of the constructive trust or agency for Class Members;

(e)   That the Court determine and decree that Defendant Petco should cease and desist from further improper collection of

sales tax on the value of coupons or discounts in the Commonwealth of Pennsylvania;

(f)     That the Court determine and decree that Defendant Petco is liable to the Class Members for all amounts collected from Class Members under the guise of collecting a "sales tax," to the extent that no sales tax should have been imposed and was not payable, plus interest and costs; and

(g)     That the Court enter such other relief as it may deem proper under the circumstances.

## COUNT III
## (Injunction)

32.     Paragraphs 1 through 31 above are incorporated herein by reference as if fully set forth.

33.     The Class Members' right to be exempt from the improper imposition and collection of sales tax as set forth herein is clear.

34.     The impropriety of Defendant Petco's collection of such sales tax is likewise clear.

35.     Plaintiffs are reasonably likely to succeed on the merits of their claims.

36.     It is believed and therefore averred that Defendant Petco, if it remits improperly charged sales taxes to the Pennsylvania Department of Revenue, holds those funds for a time in its own accounts, and remits funds on a monthly or quarterly basis.

37.     Regardless of whether or not it remits the improperly charged funds to the Pennsylvania Department of Revenue, Defendant Petco continues to automatically charge residents of this Commonwealth taxes in contravention of the laws of this

10

Commonwealth, the Department of Revenue's regulations and guidance, and the rulings of the Department's Board of Appeals.

38.   Defendant Petco should be immediately, and thereafter forever and permanently enjoined, from charging and collecting funds in contravention of the mandates of Reg. Sec. 33.2(b)(2).

39.   With respect to funds already improperly collected and/or already remitted to the Commonwealth or any political subdivision thereof, Defendant Petco should be required to seek a refund of all such sales taxes from the Department of Revenue, since once the improperly charged amounts are remitted, it is not likely that the typical consumer will have sufficient knowledge or understanding of the process for obtaining a refund from either the Commonwealth or Petco.  Thus, as a practical matter, the filing of individual claims is unlikely, which in turn makes it unlikely that the wrongs being committed by Petco on an ongoing basis can be adequately compensated by money damages alone.

40.   The Department of Revenue has established several mechanisms by which a retailer like Defendant Petco can seek and obtain a refund on behalf of all Class Members.  For example, Revenue Ruling SUT-030038 permits a vendor like Petco to refund taxes and "take a credit on a subsequent sales tax return...for taxes overpaid." *See also, e.g.,* 72 P.S. §7252 (refunds to "assigns" permitted); Revenue Form DBA-06 ("Assignment of Rights—Sales/Use Tax Refund").

41.   Defendant Petco is in the best position to act because it has exclusive possession (through its POS and data warehouse systems) of the information

necessary to determine which transactions involved the tender of coupons, the amount of those coupons, the amount of improperly collected funds, and the identity of persons who overpaid and are therefore entitled to reimbursement.

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, moves this Honorable Court to preliminarily, and then permanently, enjoin Defendant Petco as follows:

(a)    Enjoining Defendant from continuing to charge and/or collect sales taxes on the gross amount of a purchase, without taking into consideration the new purchase price established by virtue of a store or manufacturer's coupon tendered to, and accepted by, Petco, which makes certain taxes exempt by virtue of Section 33.2 of the Department of Revenue Tax Regulations;

(b)    Enjoining Defendant from remitting funds currently in its possession, custody, or control, to the extent those funds represent charged sales taxes which should not be charged as set forth above;

(c)    Immediately requiring Defendant Petco to take all actions necessary to modify its method of calculating charges relating to sales so that purchasers of product in Pennsylvania are not charged sales tax in violation of Reg. Sec. 33.2(b)(2); and

(d)    To further immediately file all documents necessary to request a refund from the Department of Revenue so that Class Members can be reimbursed for Defendant's improper collection practices.

## Count IV
## (Unjust Enrichment)

42.   Paragraphs 1 through 41 above are incorporated herein by reference as if fully set forth.

43.   By collecting more from consumers than it was entitled to collect, and to the extent it failed to remit improperly charged sales tax or otherwise benefitted from its improper actions, Defendant Petco was unjustly enriched, to the deprivation of Class Members.

44.   Without limitation, Section 7227 of the Pennsylvania Tax Code provided (at least until August, 2016) that Defendant Petco, at minimum, benefitted from the improper collection of sales tax from Class Members by being able to "credit and apply against the tax payable" a commission of 1% of the amount of tax improperly collected from Class Members.

45.   In addition, by depositing the improperly collected funds into Petco's accounts and holding those funds prior to remitting the funds to the Commonwealth and its political subdivisions, Defendant Petco earned interest and had use of the improperly collected funds for a period of time.

46.   Thus, and again at a minimum, Defendant Petco was unjustly enriched by being able to retain a percentage of the taxes collected improperly, or by profiting from the use of those improperly collected funds, to the detriment of Class Members.

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, demands judgment in their favor and against Defendant Petco, in excess of

13

the arbitration limits of this Court (with a specific amount to be determined at a later date), plus interest and costs.

### Count V
### (Unfair Trade Practices)

47.    Paragraphs 1 through 46 above are incorporated herein by reference as if fully set forth.

48.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("UTPCPL"), has declared it illegal to engage in certain unfair or deceptive acts or practices in this Commonwealth.

49.    In the conduct of its trade or commerce, Defendant Petco collected, or purported to collect, purchase prices (as defined in the Tax Code and Regulations) on goods and services sold primarily for personal, family, or household purposes, in excess of the amounts authorized by law.

50.    By virtue of Defendant Petco's improper collection and use of the funds of Plaintiff Jordan and the Class, by virtue of its failure to properly disclose to consumers that Defendant was not permitted to collect sales tax on the value of store or manufacturer's coupons tendered for sales in Pennsylvania, and by virtue of its failure and/or refusal to program its POS and/or cash register systems to exclude such taxes from being applied on the value of coupons tendered in Pennsylvania (despite the fact that such programming could be done with minimal effort), Defendant Petco has engaged in activities which violate the UTPCPL in at least the following ways:

> (a)    By representing that coupons issued by Defendant Petco and/or manufacturers in order to entice consumers to purchase goods at Petco have characteristics that they do

not have (*i.e.*, that they are subject to taxation), in violation of 73 P.S. § 201-2(4)(b);

(b) By creating a likelihood of confusion or misunderstanding by failing to clearly and fully explain the cost and terms of the Class Members' purchase, leading them to rely on Petco's apparent superior knowledge of tax laws and regulations, and the reasonable belief that they would not pay any additional money than required by law;

(c) By engaging in deceptive conduct which creates a likelihood of confusion and misunderstanding in structuring its receipts in such a way that a typical consumer (and upon information and belief, Petco's own tax department) is unaware of what items purchased were properly subject to taxation, or that coupons should be deducted from the purchase price before taxation, even after the item is purchased and payment is tendered; and

(d) By engaging in deceptive conduct which creates a likelihood of confusion and misunderstanding with respect to what constitutes proper charges to customers purchasing goods in Pennsylvania, in violation of 73 P.S. § 201-2(4)(xxi).

51.    Defendant Petco's overcharge for the purchase of items as set forth in this Complaint are not revealed to Plaintiff or Class Members until after the transaction between the Class Members and Defendant is complete. It is only after funds and coupons are tendered to Defendant Petco by the Class Member, and a receipt is provided, that the consumer would have the opportunity (even if the receipts were not confusing and deceptive in the first instance) to determine that they had been overcharged. Among other things, this is significant because Defendant Petco may take the position, whether legally or illegally, that once the funds are collected they cannot be returned to the consumer.

52.    Because of its violations of the UTPCPL, Defendant Petco is liable to all Class Members for actual damages or $100 per violation, whichever is greater, trebled, plus costs, interest and attorneys' fees.  73 P.S. § 201-9.2.

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, respectfully demands judgment in his favor and against Defendant Petco, in an amount yet to be determined, but exceeding the arbitration limits of this Court, trebled, plus costs, interest and attorneys' fees.

## Count VI
### (Violation of the Fair Credit Extension Uniformity Act)

53.    Paragraphs 1 through 52 above are incorporated herein by reference as if fully set forth.

54.    The Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S.A. § 2270.1, *et seq*, is, like the UTPCPL, a consumer protection statute designed to protect, *inter alia*, against unfair or deceptive acts or practices relating to the collection of "debts."

55.    The FCEUA defines "consumer" as "a natural person residing in this Commonwealth who owes or is alleged to owe a debt **or** one who has incurred or is alleged to have incurred liability for the debt within this Commonwealth…."  73 Pa. C.S.A. § 2270.3 (emphasis added).

56.    The FCEUA Class Members (as defined below) are "consumers" within the meaning of the FCEUA.

57.    The FCEUA defines a "debt," *inter alia*, to "include any amount owed as a tax to any political subdivision of this Commonwealth." *Id.*

16

58.     The FCEUA defines a "debt collector" as "[a] person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed to a creditor or assignee of a creditor." *Id.*

59.     The term "debt collector" further, and expressly, includes "a person, other than an elected or appointed official of any political subdivision of this Commonwealth, who collects or attempts to collect a tax or assessment owed to any political subdivision of this Commonwealth." *Id.*

60.     The term "creditor" under the FCEUA means "[a] person, including agents, servants, or employees conducting business under the name of the creditor within the Commonwealth, to whom a debt is owed or alleged to be owed." *Id.*

61.     The Commonwealth's political subdivisions of Allegheny County and Philadelphia County (including the City of Philadelphia) impose a local sales tax of 1% and 2% respectively, in addition to the sales tax collected by the Commonwealth.

62.     This local sales tax, which is imposed at the point of sale, is collected by retailers like Defendant Petco, for the political subdivision, and reported separately on the retailer's sales tax return, pursuant to 61 Pa. Code § 60.16.

63.     Defendant Petco is, at minimum, a debt collector within the meaning of the FCEUA. In the alternative, and to the extent Defendant Petco contends it is an "agent" conducting business in the name of the person owed the tax (which is denied), Defendant Petco is a "creditor" within the meaning of the FCEUA.

17

64.     Defendant Petco engaged in unfair and deceptive acts or practices, within

the meaning of the FCEUA, in at least the following ways:

        (a)    By representing to consumers (whether intentionally or not) that the collection of a tax on the value of store or manufacturer's coupons is permitted by law, when it is not;

        (b)    By actually collecting funds from consumers under the guise of properly collecting a sales tax, thereby causing an ascertainable loss to the consumer and depriving the consumer of their property;

        (c)    By using this false representation/failure to disclose, and deceptively failing to clearly show, on its consumer sales receipts, that the tax being charged should have been charged on the "return value" or "subtotal" of the purchase price, rather than on the gross purchase price;

        (d)    By using false, deceptive and/or misleading representations or means of collecting a tax by implying that it was acting under authority or mandate of the state or political subdivision, when it was not;

        (e)    By using false, deceptive and/or misleading representations or means of collecting a tax by representing that the alleged debt had a character, amount, or legal status it did not have (*i.e.*, that sales tax was collectable and payable to a political subdivision of the Commonwealth, when it was not);

        (f)    By using a false representation or deceptive means to collect or attempt to collect a tax.

65.     Because a consumer debt and sales tax relating to the sale of personal,

family, or household goods occurs in the conduct of trade or commerce, violation of the

FCEUA "shall constitute a violation of the [UTPCPL]." 73 Pa. C.S.A. § 2270.5.

66.     The UTPCPL provides, in turn, for a minimum recovery for each violation

of $100 (subject to trebling), plus costs and attorneys' fees. 73 P.S. § 201-9.2.

WHEREFORE, Plaintiff Noah Jordan, on behalf of himself and all others similarly situated, demands judgment favor of the Class and against Defendant Petco, in an amount which exceeds the arbitration limits of this Court, trebled, plus costs, interest and attorneys' fees.

## Class Action Allegations

67.    Paragraphs 1 through 66 above are incorporated herein by reference as if fully set forth.

68.    The Class relating to the causes of action set forth in Counts I, II, III, IV and V (the "General Class") consists of all individuals who: (a) on or after November 8, 2015, purchased any item(s) from a Petco store in Pennsylvania that was subject to the payment of sales tax, (b) received any discount on that item or those items by virtue of a discount coupon, a store coupon, or a manufacturer's coupon, and (c) was charged or paid sales tax on the original purchase price of the item(s) without Petcc deducting the amount of the discount before calculating the sales tax due.

69.    The Class relating to Count V (the "FCEUA Class") is a subset of the General Class, and consists of all individuals who:  (a) on or after November 8, 2019, purchased any item(s) from a Petco store in Allegheny or Philadelphia Counties that was subject to the payment of sales tax, (b) received any discount on that item or those items by virtue of a discount or a coupon, a store coupon, or a manufacturer's coupon, and (c) was charged or paid sales tax on the original purchase price of the item(s) without Petco deducting the amount of the discount before calculating the sales tax due.

70.     The General Class and the FCEUA Class are collectively referred to herein as the "Class Members" or the "Class," unless the context requires otherwise.

71.     The questions of law and fact relating to Defendant Petco's conduct, and the inequity and impropriety of that conduct, as more fully set forth above, are questions which are common to and affect the entire Class.    These common questions predominate over and are a necessary precedent to any questions affecting only individual Class Members.

72.     The claims of the named Class Representative are typical of the claims of the Class.

73.     While the exact number of Class Members is not yet known, subject to discovery, it is believed and therefore averred that the Class numbers in the thousands. While the Class is numerous, it is believed that Defendant Petco maintains extensive records relating to the amount of taxes charged in violation of Pennsylvania tax regulations as described in this Complaint, along with the identity of Class Members.

74.     Individual actions by members of the Class would, as a practical matter, be dispositive of the interest of members who are not parties, and may substantially impede his or her ability to protect his or her interest and/or create or lead to inconsistent adjudications.

75.     In view of the potential expenses of litigation, the separate claims of individual Class Members are insufficient to support the thousands of separate actions. A Class Action is the most expeditious and cost effective method of addressing Defendant Petco's improper conduct in Pennsylvania.

76.     Defendant Petco, as more fully set above, has acted and/or refused to act on grounds generally applicable to the Class by engaging in conduct which is contrary to Pennsylvania law, which constitutes unfair and/or deceptive conduct under Pennsylvania law, breaches a constructive trust, and unjustly enriches Defendant Petco.

77.     It is believed and therefore averred that counsel for the Class Representatives will diligently and adequately represent the interests of the Class. Said counsel is a partner in a well-respected law firm consisting of 30 attorneys with sufficient support staff to manage an action of this size. Counsel has litigated class actions in the past.

78.     The Class Representative, after reasonable inquiry, has determined that he has or can acquire adequate financial resources to ensure that the interests of the Class will not be harmed.

Respectfully submitted,

ROTHMAN GORDON, P.C.

By: _____

Frank G. Salpietro, Esquire
Pa I.D. No. 47154

310 Grant Street – 3rd Floor
Pittsburgh, PA 15219
(412) 338-1185 (telephone)
(412) 246-1785 (facsimile)
fgsalpietro@rothmangordon.com

21

Attorneys for Plaintiff Noah R. Jordan, on behalf of himself and all others similarly situated

## **VERIFICATION**

I, Noah R. Jordan, verify that the statements contained in the foregoing Class Action Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements contained herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

Dated: _Nov. 8, 2021_

_____
Noah R. Jordan

53036-1
4890-6789-2736, v. 1



WATERFRONT #01811
590 EAST WATERFRONT DR
HOMESTEAD, PA 15120

05/25/21 10 38AM Reg 001 Trans
943
Helped by 300146

002732766 SU-DOG 35# ADULT SMA   49.99 T
                    Reg Price  63.99
                    Pals Dsc -9.00   (2)
                    Mfr Coupon -5.00  (2)
                    Return Value: 49.99

            Taxable Total       63.99
            Subtotal            49.99
            Tax FA 7%            4.48
            TOTAL               54.47

Debit Card                      54.47
2021-05-26 10:38:48
Total:     USD $54.47
US DEBIT
Entry Method: Chip
CARD #: XXXXXXXXXXXX7685
Purchase   - APPROVED
AUTH CODE: 850661
Mode: Issuer  PIN Verified
AID: A0000000980840
TVR: 80C0048000
IAD: 06C10403A08000
TSI: 6800
ARC: 00
RRN: 12551

# 1 Item

Pals Rewards Number: 468812039

For being a valued member you saved:
Pals Savings                    14.00

TOTAL SAVINGS                   14.00

T = Taxable       N = Non-Taxable
(1)Discount not subject to sales tax
(2)Manufacturer coupon subject to sales tax

Thank you for shopping at Petco!
Questions/comments? 888-824-7257



Save time and money with repeat delivery!



EXHIBIT
1
Petco Class Action

REV-65 GA (03-13)



**pennsylvania**
DEPARTMENT OF REVENUE
Board of Appeals
PO BOX 281021
Harrisburg PA 17128-1021

## BOARD OF APPEALS PETITION FORM

**FOR INTERNAL USE ONLY**

**GENERAL INSTRUCTIONS:** Please type or print neatly in blue or black ink. Attach a copy of the notice being appealed. Mail this petition to the address above. Petitions filed via the U.S. Postal Service are considered filed as of the postmark date. The department does not recognize meter dates. Petitions filed by any other method are considered filed on the date received by the department. Petitions may also be faxed to 717-346-2011.

### TAX INFORMATION:

☒ Sales Tax  ☐ Employer Withholding Tax  ☐ Corporation Tax  ☐ Personal Income Tax  ☐ Other _____

Account ID Number _____  Federal Employer Identification Number _____

Tax Period: Begin _____  End _____

Is this a petition for refund? ☒ Yes  ☐ No  If yes, ☐ Cash ☐ Credit  Total Refund Requested $ 0.21

If petition is in regard to sales tax, please list amount(s) below:

PA Tax Refund $ 0.18  Philadelphia Tax Refund $ _____  Allegheny County Tax Refund $ 0.03

Has any portion of this request been included in another petition for refund or requested in a current or prior audit?
☐ Yes  ☒ No  If yes, please provide relevant docket number _____ and/or assessment number _____.

Is this a petition for reassessment/review of tax, penalty and/or interest? ☐ Yes  ☒ No

Notice Number _____  Notice Mailing Date _____  Assessment Amount $ _____

### PETITIONER INFORMATION:

☐ Corporation  ☒ Individual  ☐ Partnership (Attach a list of partners and addresses.)  ☐ Other _____
☐ Estate  Date of Death _____ (Date of Death required for estates & personal income tax fiduciary appeals.)

Business Name _____

Trade Name _____

Individual Last Name Farneth  First Name Brian  MI __

Social Security Number  REDACTED  **PRIVACY NOTIFICATION:** The department is authorized under federal law, 42 U.S.C. § 405 (c), to use your Social Security number in administering state tax law. The department uses your Social Security number to establish your identity and to process your appeal.

Street Address 2615 Fox Hollow Drive  City Pittsburgh  State PA

Country USA  ZIP Code +4 15237-3867  Website _____

Telephone (412) 965-4774  Fax _____  Email Address brian.farneth@gmail.com

Contact Person _____  Contact Phone Number _____

### REPRESENTATIVE INFORMATION:

Representation by an attorney, CPA or other person is not required. However, if so represented, complete this area.

Business Name _____

Individual Last Name _____  First Name _____  MI __

Street Address _____  City _____  State ____

Country _____  ZIP Code +4 _____  Website _____

Telephone _____  Fax _____  Email Address _____

Contact Person _____  Contact Phone Number _____

### SCHEDULING REQUEST:

☐ Hearing requested.

☒ No hearing requested. Please decide on basis

☐ This case to be held pending action of court

Case Number _____  Court Citation Number _____

**EXHIBIT**
2
Petco Class Action

### FOR INTERNAL USE ONLY

DOCKET # _____

EXAMINER _____

PETITION DUE _____

**CORRESPONDENCE WITH THE BOARD OF APPEALS:**
Communication, including the board's final decision and order, may be transmitted to you or your representative via email, should you elect so below. If you elect to receive communications via email, you and your representatives assume the responsibility for the confidentiality of the information contained in emails sent to and from the Board of Appeals. The commonwealth will not be held liable for the disclosure of any confidential information sent via email.

Send correspondence to (select only one): ☒ Petitioner or ☐ Representative

Send correspondence via (select only one): ☒ U.S. Mail or ☐ Email

Send Decision and Order via (select only one): ☒ U.S. Mail or ☐ Email

**ISSUES:**
Itemize the issue(s) involved. What is the subject of appeal?

On June 8, 2013, I purchased two identical cans of Gillette Fusion Proglide shaving gel from Walmart. At the check out, I presented a buy one, get one free coupon, which was scanned by Walmart's electronic cash register. The register deducted the cost of one of the cans of shaving gel but charged sales tax on both cans of shaving gel. I paid sales tax based upon a $2.97 cost of a can of shaving gel that I received for free. Attached is a copy of the coupon I presented and the receipt I received from Walmart.

**ARGUMENTS:**
Explain in detail why relief should be granted. Attach additional pages if necessary. Enclose copies of any supporting documents. Petitions for refund must be accompanied by proof of payment of the tax to the commonwealth and copies of invoices, credit memoranda, exemption certificates, etc. where relevant. Copies of canceled checks must include images of the fronts and backs of the checks. When submitting sales and use tax appeals (audit reassessments or refunds), complete and attach an Appeal Schedule (REV-39), following the instructions on the reverse side of the form. Appeal Schedules may be submitted electronically. A spreadsheet may also be created, using REV-39 as a guide. For information and instructions, call 717-783-3664. The petition form and schedule are available on the Board's Online Petition Center at www.boardofappeals.state.pa.us.

I paid 21 cents (7% of the retail cost) of sales tax for a can of shaving gel that I received for free. Since I did not pay anything for the can of shaivng gel, the sales tax I paid should be refunded to me.

**COMPROMISE:**
The Board of Appeals will consider compromises of assessment and refund appeals. If you wish to propose a compromise, please complete and submit a Request for Compromise (DBA-10) with your petition or at any time prior to issuance of a final decision regarding the appeal.

**SIGNATURES:**
All petitions must be signed by the petitioner or authorized representative. If signed only by an authorized representative, written authorization must accompany the petition. If the petitioner is a corporation, a corporate officer must sign.

Under penalties prescribed by law, I hereby certify this petition has been examined by me, and to the best of my knowledge, information and belief, the facts contained in the petition are true, correct and complete and the petition is not made for the purpose of delay. Also, if this is a petition for refund, I certify that the refund requested has not been granted in an audit report, nor has it been included in any other petition for refund.

Petitioner's Name and Title Brian Farneth

Petitioner's Signature _____ Date 2/16/15

Representative's Name and Title _____

Representative's Signature _____ Date _____

WE VALUE YOUR OPINION!

WE WANT TO KNOW ABOUT YOUR SHOPPING
EXPERIENCE TODAY AT WAL-MART.

Please complete a survey about
today's store visit at:

http://www.survey.walmart.com

You will need to enter the
following online:

ID #:   7FPVD51VTF1Z

IN RETURN FOR YOUR TIME YOU COULD
RECEIVE ONE OF FIVE $1000
WALMART SHOPPING CARDS

Must be 18 or older and a legal
resident of the US, DC, or PR to
enter. No purchase necessary to
enter or win. To enter without
purchase and for complete official
rules visit
www.entry.survey.walmart.com.
Sweepstakes period ends on the date
shown in the official rules. Survey
must be taken within TWO weeks
of today.

Esta encuesta también se encuentra
en espanol en la página del Internet

THANK YOU

--------------------------------------

# Walmart
## Save money. Live better.

( 412 ) 782 - 4444
MANAGER DEBORAH SABEENEY
877 FREEPORT RD
PITTSBURGH PA 15238
ST# 5339 OP# 00002131 TE# 04 TR# 08026
SHAVE GEL    004740000359      2.97 X
SHAVE GEL    004740000359      2.97 X
COUPON 47400 054740020000      2.97-0
              SUBTOTAL          2.97
       TAX 1   7.000 %          0.42
               TOTAL            3.39
          DEBIT TEND            3.39
       DEBIT CASH BACK         40.00
  TOTAL DEBIT PURCHASE         43.39
          CHANGE DUE           40.00

EFT DEBIT        PAY FROM PRIMARY
   3.39  PURCHASE
  40.00  CASH BACK
  43.39  TOTAL PURCHASE
ACCOUNT #       **** **** **** 0121  S
REF # 316000585300
NETWORK ID. 0090 APPR CODE 428022
TERMINAL # 28004058

        06/08/13    20:56:58

# # ITEMS SOLD 2

TC# 3780 6418 6987 2322 0132



Ask a Pharmacy Sales Associate how you
can save money on pet medications!
        06/08/13    20:57:01

Apr. 2. 2015  1:52PM                                                        No. 1375    P. 1

**BOARD OF APPEALS**
P O BOX 281021
HARRISBURG, PA 17128-1021



**pennsylvania**
DEPARTMENT OF REVENUE

BRIAN FARNETH                          IN RE PETITION OF:
2615 FOX HOLLOW DRIVE
PITTSBURGH, PA 15237-3867              BRIAN FARNETH

                                       DOCKET NO.:        1502529
                                       TAX TYPE:          Sales/Use Tax
                                       APPEAL TYPE:       Refund
                                       ACCOUNT NO.:       NO LICENSE
                                       ASSESSMENT NO.:    N/A
                                       TAX PERIOD:        6/1/2013 to 6/30/2013
                                       APPEAL FILED:      2/20/2015
                                       EXAMINER:          Elizabeth A. Rothermel
                                                          Direct Dial: (717) 783-6234
                                                          Fax: (717) 787-7270
                                                          erothermel@pa.gov
                                       MAILING DATE:      March 25, 2015

## DECISION AND ORDER

Upon review of the evidence submitted by Petitioner and Departmental records, it is hereby, ORDERED, that the Petitioner be granted a cash refund in the amount of $.21, all of which amount was paid within the statutory period provided for under Section 253(a) of the Tax Reform Code of 1971.

### FOR THE BOARD OF APPEALS

John A. Eason, Member

A check for any refund ordered by the Board of Appeals will be mailed to you under a separate cover.

Any appeal from this decision must be filed on or before JUNE 23, 2015 with the Board of Finance and Revenue, 1101 South Front Street, Suite 400, Harrisburg, Pa 17104, telephone 717.787.2974.

Please be advised that all evidence submitted in conjunction with this appeal becomes the property of the Commonwealth of Pennsylvania and **will not be returned.**

If you require this information in an alternate format under the provisions of Americans with Disabilities Act of 1990, please call 717.783.3664, or for services for taxpayers with special hearing and speaking needs: 1.800.447.3020 (TT only).



EXHIBIT
3
Petco Class Action

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: _____Plaintiffs_____

Signature: _____

Name: _____Frank G. Salpietro_____

Attorney No.: _____47154_____

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
### ALLEGHENY _____ **County**

| For Prothonotary Use Only: | |
|---|---|
| Docket No.: | TIME STAMP |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

<table>
<tr><td rowspan="5"><b>S E C T I O N A</b></td>
<td colspan="2">
<b>Commencement of Action:</b><br>
☒ Complaint    ☐ Writ of Summons    ☐ Petition<br>
☐ Transfer from Another Jurisdiction    ☐ Declaration of Taking
</td></tr>
<tr>
<td>Lead Plaintiff's Name:<br>NOAH R. JORDAN</td>
<td>Lead Defendant's Name:<br>PETCO HEALTH AND WELLNESS COMPANY, INC.</td>
</tr>
<tr>
<td>Are money damages requested? ☒ Yes   ☐ No</td>
<td>Dollar Amount Requested:    ☐ within arbitration limits<br>(check one)    ☒ outside arbitration limits</td>
</tr>
<tr>
<td>Is this a <b><i>Class Action Suit?</i></b>  ☒ Yes  ☐ No</td>
<td>Is this an <b><i>MDJ Appeal?</i></b>  ☐ Yes  ☒ No</td>
</tr>
<tr>
<td colspan="2">
Name of Plaintiff/Appellant's Attorney:  Frank G. Salpietro, Esquire - Rothman Gordon, P.C.<br>
    ☐  <b>Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)</b>
</td></tr>
</table>

<table>
<tr><td rowspan="10"><b>S E C T I O N B</b></td>
<td colspan="3">
<b>Nature of the Case:</b>   Place an "X" to the left of the <u><b>ONE</b></u> case category that most accurately describes your <b><i>PRIMARY CASE.</i></b> If you are making more than one type of claim, check the one that you consider most important.
</td></tr>
<tr>
<td valign="top">
<b>TORT</b> <i>(do not include Mass Tort)</i><br>
☐ Intentional<br>
☐ Malicious Prosecution<br>
☐ Motor Vehicle<br>
☐ Nuisance<br>
☐ Premises Liability<br>
☐ Product Liability <i>(does not include mass tort)</i><br>
☐ Slander/Libel/ Defamation<br>
☒ Other: <i>Unfair Trade Practices</i>
</td>
<td valign="top">
<b>CONTRACT</b> <i>(do not include Judgments)</i><br>
☐ Buyer Plaintiff<br>
☐ Debt Collection: Credit Card<br>
☐ Debt Collection: Other<br>
_____<br>
_____<br>
☐ Employment Dispute: Discrimination<br>
☐ Employment Dispute: Other<br>
_____<br>
_____<br>
☐ Other:<br>
_____<br>
_____
</td>
<td valign="top">
<b>CIVIL APPEALS</b><br>
Administrative Agencies<br>
☐ Board of Assessment<br>
☐ Board of Elections<br>
☐ Dept. of Transportation<br>
☐ Statutory Appeal: Other<br><br>
☐ Zoning Board<br>
☐ Other:<br>
_____<br>
_____
</td>
</tr>
<tr>
<td valign="top">
<b>MASS TORT</b><br>
☐ Asbestos<br>
☐ Tobacco<br>
☐ Toxic Tort - DES<br>
☐ Toxic Tort - Implant<br>
☐ Toxic Waste<br>
☐ Other:<br>
_____<br>
_____
</td>
<td valign="top">
<b>REAL PROPERTY</b><br>
☐ Ejectment<br>
☐ Eminent Domain/Condemnation<br>
☐ Ground Rent<br>
☐ Landlord/Tenant Dispute<br>
☐ Mortgage Foreclosure: Residential<br>
☐ Mortgage Foreclosure: Commercial<br>
☐ Partition<br>
☐ Quiet Title<br>
☐ Other:<br>
_____
</td>
<td valign="top">
<b>MISCELLANEOUS</b><br>
☐ Common Law/Statutory Arbitration<br>
☐ Declaratory Judgment<br>
☐ Mandamus<br>
☐ Non-Domestic Relations Restraining Order<br>
☐ Quo Warranto<br>
☐ Replevin<br>
☐ Other:<br>
_____<br>
_____
</td>
</tr>
<tr>
<td valign="top">
<b>PROFESSIONAL LIABLITY</b><br>
☐ Dental<br>
☐ Legal<br>
☐ Medical<br>
☐ Other Professional:<br>
_____<br>
_____
</td>
<td></td><td></td>
</tr>
</table>

*Updated 1/1/2011*



61 2014 00091893

**Allegheny County**
**Jerry Tyskiewicz**
**Department of Real Estate**
**Pittsburgh, PA 15219**

Exhibit "B"

---

Instrument Number: 2014-91893          BK-M VL-44672 PG-525

**Recorded On: December 31, 2014**    As-Mortgage

**Parties: RUSSO ALFREDO F**

To     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC NOM          # of Pages: 10

**Comment:**

---

\*\*\*\*\*\*\*\*\*\*\*\* THIS IS NOT A BILL \*\*\*\*\*\*\*\*\*\*\*\*

| Mortgage | 162.00 |
|----------|--------|
|          | 0      |
|          | 0      |
| Total:   | 162.00 |

I hereby certify that the within and foregoing was recorded in the Department of Real Estate in Allegheny County, PA

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

**File Information:**                              **Record and Return To:**

Document Number: 2014-91893
Receipt Number: 2790656                          EXPRESS ABSTRACT AND SETTLEMENT INC.
Recorded Date/Time: December 31, 2014 01:16:14P  664 TIRE HILL ROAD
Book-Vol/Pg: BK-M VL-44672 PG-525                JOHNSTOWN PA 15905
User / Station: E Walls - Cash Super 04



*Erry Tyke*

**Jerry Tyskiewicz, Acting Manager**
**Rich Fitzgerald, County Executive**

Recordation Requested by:
UNIFIRST MORTGAGE CORPORATION
217 EISENHOWER BLVD
JOHNSTOWN, PA 15905

When Recorded Mail to:
EXPRESS ABSTRACT AND SETTLEMENT, INC
664 TIRE HILL ROAD
JOHNSTOWN, PA 15905

Send Tax Notices to:
UNIFIRST MORTGAGE CORPORATION
217 EISENHOWER BLVD
JOHNSTOWN, PA 15905



PARCEL TAX ID#: 121-K-41
State of Pennsylvania   LOAN#: ▓▓▓▓▓
MIN ▓▓▓▓▓▓▓▓▓▓▓▓

—————— [Space Above This Line For Recording Data] ——————

**MORTGAGE**

| FHA Case Number |
| --- |
| ▓▓▓▓▓▓▓▓ |

THIS MORTGAGE ("Security Instrument") is given on November 25th, 2014       . The Mortgagor is
Alfredo F Russo

whose address is   112 Carlisle Drive , Pittsburgh, PA 15223

"Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS").
MERS is a separate corporation acting solely as a nominee for Lender and Lender's successors and assigns.MERS
is the Mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of 1901 E. Voorhees Street, Suite C, Danville, IL 61834 or P.O.
BOX 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
UNIFIRST MORTGAGE CORPORATION, A COLORADO CORPORATION
which is organized and existing under the laws of THE STATE OF COLORADO                              , and whose
address is   217 EISENHOWER BLVD, JOHNSTOWN, PA 15905

("Lender"). Borrower owes Lender the principal sum of
FORTY FIVE THOUSAND TWO HUNDRED SEVENTY EIGHT AND NO/100
Dollars (U.S. $ 45,278.00                      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on
December 1st, 2044                       . This Security Instrument secures to Lender: (a) the repayment of
the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note.

PENNSYLVANIA - Single Family - FHA SECURITY INSTRUMENT - 1/96   Page 1 of 8        GCC - m1590-1PA (11/10)



For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in  ALLEGHENY                                           County, Pennsylvania:
See Attached

which has the address of  1711 Morningside Ave  , Pittsburgh                                                        [Street, City],
Pennsylvania   15206                         ("Property Address");

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.    **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds".

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. section 2601 et seq. and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

GCC - m1590-2PA (11/12)                          Page 2 of 8



If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

3.    **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.    **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any    delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the    proceeds    to    the    principal    shall    not    extend    or    postpone    the    due    date    of    the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially

GCC - 1590-3PA (06/00)                    Page 3 of 8



change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to the Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

GCC - 1590-4PA (06/00)                    Page 4 of 8

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    30 DAY    from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to    30 DAY    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.    **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this

GCC - 1590-5PA (08/00)          Page 5 of 8



Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

GCC - 1590-6PA (03/09)                              Page 6 of 8



Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

20. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument; and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

21. **Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

22. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider
☐ Graduated Payment Rider
☐ Other(s) [specify]

☐ Growing Equity Rider
☐ Planned Unit Development

GCC - 1590-7PA (08/10)    Page 7 of 8



BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness:

_____ (Seal)
                                -Borrower
Alfred F Russo

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee,
UNIFIRST MORTGAGE CORPORATION of
herein is as follows:

_____
                    Attorney or Agent for Mortgagee

211 EISENHOWER BLVD. JOHNSTOWN, PA 15905

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF   PENNSYLVANIA
                          } ss
COUNTY OF   Allegheny

On this, the 25th   day of   November
, 2014 , before me,
the undersigned Notary Public, personally appeared
Alfredo F Russo

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of PENNSYLVANIA
                    COMMONWEALTH OF PENNSYLVANIA
                              Notarial Seal
                    George P. Geyer Jr., Notary Public
                    City of Pittsburgh, Allegheny County
                    My Commission Expires March 24, 2015
            MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

NOTARY EXPIRATION DATE:

NMLSR ID: 337096
NMLSR (L.O.) ID: 1042375 (Mark Rotunda)
Loan Originator: UNIFIRST MORTGAGE CORPORATION

GCC-1590-8PA (03/14)                          Page 8 of 8

ALL THAT CERTAIN lot or piece of ground situate in the 10th Ward of the City of Pittsburgh, County of Allegheny and Commonwealth of Pennsylvania, being Lot No. 434 in a Plan of Lots laid out by John H. Sawyer recorded in Plan Book Volume 6, Page 34, and bounded and described as follows, to-wit:

BEGINNING on the Westerly side of Morningside Avenue at a distance of 100 feet Northwardly from Martha Street; thence running Northwardly along said Morningside Avenue, 20 feet to a pin; and thence extending back Westwardly, preserving the same width throughout, 100 feet to an alley 20 feet wide.

PARCEL NO. 121-K-41

BEING the same premises which John Ondrejik, unmarried, by Deed dated 03/28/1973 and recorded 03/29/1973 in the Department of Real Estate Office of Allegheny County, Pennsylvania in Deed Book Volume 4665, Page 239, granted and conveyed unto Louis G. Geidel and Myrtle E. Geidel, husband and wife.

AND the said Louis G. Geidel has since departed this life on _-_, leaving title vested in Myrtle E. Geidel by right of survivorship.

AND the said Myrtle E. Geidel has since departed this life on 05/16/2011, leaving a Last Will and Testament, duly filed and probated to No. 02-11-06441 in the Office of the Register of Wills of Allegheny County, wherein she did nominate Louis G. Geidel, Jr., to whom Letters Testamentary were granted on 10/25/2011.

NOTICE - THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957 P.L., 984 as amended, and is not intended as notice of unrecorded instruments, if any).

NOTICE - THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THE NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, ARE FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT TO PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

Exhibit "C"

**Judgment Figures**
**Good Through Date:**              10/1/2021

Loan #:
Borrower's Name:              ALFREDO F RUSSO

Principal Balance                          $42,446.62

Deferred Balance                          $0.00
Interest                          $6,384.76  Per Diem:          $5.52 @ 4.750%  interest      8/1/2018
Interest                                                                  $0.00                              10/1/2021

Short Interest:                          $0.00

Pre-accelerate LC                          $9.45      1/17/2019
Pre-accelerate LC                          $9.45      12/17/2018
Pre-accelerate LC                          $9.45      11/21/2018
Pre-accelerate LC                          $9.45      10/17/2018
Pre-accelerate LC                          $9.45      9/17/2018
Pre-accelerate LC                          $9.45      7/17/2018
**Total Pre-accelerate LC**     $56.70

Late Charge                          $9.45      9/17/2021
Late Charge                          $9.45      8/17/2021
Late Charge                          $9.45      7/19/2021
Late Charge                          $9.45      6/17/2021
Late Charge                          $9.45      5/17/2021
Late Charge                          $9.45      4/19/2021
Late Charge                          $9.45      3/17/2021
Late Charge                          $9.45      2/18/2021
Late Charge                          $9.45      1/19/2021
Late Charge                          $9.45      12/17/2020
Late Charge                          $9.45      11/18/2020
Late Charge                          $9.45      10/19/2020
Late Charge                          $9.45      9/17/2020
Late Charge                          $9.45      8/17/2020
Late Charge                          $9.45      7/17/2020
Late Charge                          $9.45      3/17/2020
Late Charge                          $9.45      2/18/2020
Late Charge                          $9.45      1/17/2020
Late Charge                          $9.45      12/17/2019
Late Charge                          $9.45      7/17/2019
Late Charge                          $9.45      6/17/2019
Late Charge                          $9.45      5/17/2019
Late Charge                          $9.45      4/17/2019
Late Charge                          $9.45      3/18/2019
Late Charge                          $9.45      2/19/2019
**Total Late Charges**     $236.25

## CORPORATE

Litigation Fee                          $0.00
**Total Litigation Fees**     $0.00

Foreclosure Fee                          $470.00      3/11/2020
Foreclosure Fee                          $470.00      6/25/2019
Foreclosure Fee                          $335.00      4/8/2019

| | | | |
|---|---|---|---|
| Foreclosure Fee | | $75.00 | 2/12/2019 |
| Foreclosure Fee | | $840.00 | 2/6/2019 |
| **Total Foreclosure Fees** | **$2,190.00** | | |
| | | | |
| Foreclosure Cost | | $75.00 | 8/25/2020 |
| Foreclosure Cost | | $1.10 | 3/11/2020 |
| Foreclosure Cost | | $1.10 | 3/11/2020 |
| Foreclosure Cost | | $2,000.00 | 3/11/2020 |
| Foreclosure Cost | | $170.00 | 6/25/2019 |
| Foreclosure Cost | | $170.00 | 6/25/2019 |
| Foreclosure Cost | | $25.00 | 4/8/2019 |
| Foreclosure Cost | | $171.75 | 4/8/2019 |
| Foreclosure Cost | | $125.00 | 4/8/2019 |
| Foreclosure Cost | | $2.20 | 2/12/2019 |
| Foreclosure Cost | | $250.00 | 1/31/2019 |
| **Total Foreclosure Costs** | **$2,991.15** | | |
| | | | |
| Bankruptcy Fee | | $0.00 | |
| **Total Bankruptcy Fees** | **$0.00** | | |
| | | | |
| Bankruptcy Cost | | $0.00 | |
| **Total Bankruptcy Costs** | **$0.00** | | |
| | | | |
| Appraisal/BPO | | $0.00 | |
| **Total Appraisals/BPOs** | **$0.00** | | |
| | | | |
| Property Inspection | | $20.00 | 9/15/2021 |
| Property Inspection | | $20.00 | 8/18/2021 |
| Property Inspection | | $20.00 | 7/26/2021 |
| Property Inspection | | $20.00 | 6/24/2021 |
| Property Inspection | | $20.00 | 5/20/2021 |
| Property Inspection | | $20.00 | 4/14/2021 |
| Property Inspection | | $20.00 | 3/10/2021 |
| Property Inspection | | $20.00 | 2/4/2021 |
| Property Inspection | | $20.00 | 1/6/2021 |
| Property Inspection | | $20.00 | 12/2/2020 |
| Property Inspection | | $20.00 | 11/3/2020 |
| Property Inspection | | $20.00 | 10/6/2020 |
| Property Inspection | | $20.00 | 9/4/2020 |
| Property Inspection | | $20.00 | 8/6/2020 |
| Property Inspection | | $20.00 | 7/13/2020 |
| Property Inspection | | $20.00 | 6/11/2020 |
| Property Inspection | | $20.00 | 5/14/2020 |
| Property Inspection | | $20.00 | 4/14/2020 |
| Property Inspection | | $20.00 | 3/12/2020 |
| Property Inspection | | $20.00 | 2/19/2020 |
| Property Inspection | | $20.00 | 1/7/2020 |
| Property Inspection | | $20.00 | 12/6/2019 |
| Property Inspection | | $20.00 | 11/5/2019 |
| Property Inspection | | $20.00 | 10/10/2019 |
| Property Inspection | | $20.00 | 9/10/2019 |
| Property Inspection | | $20.00 | 8/8/2019 |
| Property Inspection | | $20.00 | 7/9/2019 |
| Property Inspection | | $20.00 | 6/5/2019 |
| Property Inspection | | $20.00 | 5/13/2019 |
| Property Inspection | | $20.00 | 4/5/2019 |
| Property Inspection | | $20.00 | 3/19/2019 |
| Property Inspection | | $20.00 | 2/6/2019 |

| | | |
|---|---|---|
| Property Inspection | $20.00 | 1/10/2019 |
| Property Inspection | $20.00 | 12/5/2018 |
| Property Inspection | $20.00 | 10/26/2018 |
| **Total Property Inspections** | **$700.00** | |
| | | |
| Property Preservation | $0.00 | |
| **Total Property Preservation** | **$0.00** | |
| | | |
| **Total Corp Advances** | **$5,881.15** | |

| ESCROW | | |
|---|---|---|
| MI/PMI | $42.72 | 9/3/2021 |
| MI/PMI | $42.72 | 8/4/2021 |
| MI/PMI | $42.72 | 7/2/2021 |
| MI/PMI | $42.72 | 6/4/2021 |
| MI/PMI | $42.72 | 5/4/2021 |
| MI/PMI | $42.72 | 4/2/2021 |
| MI/PMI | $42.72 | 3/4/2021 |
| MI/PMI | $42.72 | 2/4/2021 |
| MI/PMI | $42.72 | 1/5/2021 |
| MI/PMI | $43.68 | 12/4/2020 |
| MI/PMI | $43.68 | 11/4/2020 |
| MI/PMI | $43.68 | 10/2/2020 |
| MI/PMI | $43.68 | 9/4/2020 |
| MI/PMI | $43.68 | 8/4/2020 |
| MI/PMI | $43.68 | 7/3/2020 |
| MI/PMI | $43.68 | 6/4/2020 |
| MI/PMI | $43.68 | 5/4/2020 |
| MI/PMI | $43.68 | 4/3/2020 |
| MI/PMI | $43.68 | 3/4/2020 |
| MI/PMI | $43.68 | 2/4/2020 |
| MI/PMI | $43.68 | 1/3/2020 |
| MI/PMI | $44.60 | 12/4/2019 |
| MI/PMI | $44.60 | 11/4/2019 |
| MI/PMI | $44.60 | 10/4/2019 |
| MI/PMI | $44.60 | 9/4/2019 |
| MI/PMI | $44.60 | 8/2/2019 |
| MI/PMI | $44.60 | 7/10/2019 |
| MI/PMI | $44.60 | 6/4/2019 |
| MI/PMI | $44.60 | 5/3/2019 |
| MI/PMI | $44.60 | 4/4/2019 |
| MI/PMI | $44.60 | 3/4/2019 |
| MI/PMI | $44.60 | 2/4/2019 |
| MI/PMI | $44.60 | 1/4/2019 |
| MI/PMI | $45.48 | 12/4/2018 |
| MI/PMI | $45.48 | 11/2/2018 |
| MI/PMI | $45.48 | 10/4/2018 |
| MI/PMI | $45.48 | 9/2/2018 |
| MI/PMI | $45.48 | 8/3/2018 |
| MI/PMI | $45.48 | 7/3/2018 |
| MI/PMI | $45.48 | 5/5/2018 |
| MI/PMI | $45.48 | 5/1/2018 |
| MI/PMI | $45.48 | 4/3/2018 |
| MI/PMI | $45.48 | 3/2/2018 |
| MI/PMI | $45.48 | 2/2/2018 |
| MI/PMI | $45.48 | 1/3/2018 |

| MI/PMI | | $46.31 | 12/4/2017 |
| MI/PMI | | $46.31 | 11/3/2017 |
| MI/PMI | | $46.31 | 10/3/2017 |
| MI/PMI | | $46.31 | 9/5/2017 |
| MI/PMI | | $46.31 | 8/3/2017 |
| MI/PMI | | $46.31 | 7/5/2017 |
| MI/PMI | | $46.31 | 6/2/2017 |
| MI/PMI | | $46.31 | 5/3/2017 |
| **Total MI/PMI** | **$2,360.08** | | |
| | | | |
| Pro Rata MIP/PMI: | | $85.44 | FUTURE PAYMENT |
| | | | |
| Hazard Insurance | | $1,631.51 | 7/7/2021 |
| Hazard Insurance | | $1,460.93 | 7/7/2020 |
| Hazard Insurance | | $1,401.56 | 7/8/2019 |
| **Total Hazard Insurance** | **$4,494.00** | | |
| | | | |
| Taxes | | $301.30 | 2/17/2021 |
| Taxes | | $1,195.67 | 1/29/2021 |
| Taxes | | $301.30 | 2/19/2020 |
| Taxes | | $1,163.17 | 1/22/2020 |
| **Total Taxes** | **$2,961.44** | | |
| | | | |
| **Total Esc Advances** | **$9,815.52** | | |
| | | | |
| Recording Fee | | $0.00 | |
| | | | |
| Less Suspense Balance | | $0.00 | |
| | | | |
| **TOTAL:** | **$64,906.44** | | |

# Sheriff Return

**Case No:** *GD-21-013752*

**Casie Description:** *Jordan vs Petco Health and Wellness Company Inc.*

**Defendant:** *Petco Health & Wellness Company Inc.*

**Service Address:** *590 East Waterfront Drive Homestead, PA 15120 Allegheny*

**Writ Description:** *Complaint*

**Issue Date:** *11/08/2021 02:31 PM*

**Service Status:** *Served - Manager / other person authorized to accept deliveries of United States Mail*

**Served Upon:** *Petco Health & Wellness Company Inc.*

**Served By:** *JBELBACK*

**Served On:** *11/24/2021 11:07 AM*

**Service Method:** *Person In Charge*