IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOAH R. JORDAN on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PETCO HEALTH AND WELLNESS COMPANY, INC. *trading and doing business as* PETCO,<br><br>*Defendant.* | Civil Action No. 2:21-cv-1858<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Noah R. Jordan ("Jordan") filed a putative class action Complaint asserting that Defendant Petco Health and Wellness Company, Inc. ("Petco") overcharged his purchase of dog food because Petco failed to account for coupon-based discounts when it calculated the sales tax. (ECF No. 1-2). Jordan's Complaint asserts claims for conversion and misappropriation (Count I), breach of constructive trust or agency (Count II), injunction (Count III), unjust enrichment (Count IV), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count V), and violation of the Pennsylvania Fair Credit Extension Uniformity Act (Count VI). (*Id.*). Before the Court are Jordon's Motion for Remand (ECF No. 6), and Petco's Motion to Compel Individual Arbitration and Stay Litigation (ECF No. 10). On May 11, 2022, the Court *sua sponte* issued an order staying the case pending the decision of the United States Court of Appeals for the Third Circuit in *Lisowski v. WalMart Stores, Inc.*, No 21-2501, 2022 WL 2763698 (3d Cir. July 15, 2022), as that case raised similar claims and presented similar issues

1

with respect to whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, mandates remand to state court. The Third Circuit issued its decision in *Lisowski* on July 15, 2022, and the parties submitted notices clarifying their respective positions. The outstanding motions are now ready for adjudication by the Court.

### A. Plaintiff's Motion to Remand is denied.

Jordan argues that the case should be remanded on two grounds. First, he contends that TIA requires remand because it deprives the Court of the ability to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Next, Jordan argues that broader factors of comity summarized in *Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) warrant remand.

The Court stayed this case pending the outcome of the appeal in *Lisowski*.[1] There, the Third Circuit affirmed the district court's determination that the TIA was not implicated by the plaintiff's claims that sales tax was improperly assessed on a non-taxable dietary supplement and, therefore, remand was not required. In so ruling, the Third Circuit aptly held that "Lisowski's claims rest solely on Walmart's allegedly improper collection of a charge that it was not authorized to take. And the mere potential for Walmart to eventually raise a tax-based defense did not strip the District Court of jurisdiction." *Lisowski*, 2022 WL 2763698, *2. The Third Circuit also rejected the plaintiff's generalized comity-related arguments in favor of remand: "It is well established that federal courts have a 'virtually unflagging obligation…to exercise the jurisdiction given them.'" *Id.* at *2 (quoting *Colorado River Water Conservation*

---

[1] There is no need for the Court to provide a comprehensive examination of the *Lisowski* decision. Both parties have had an opportunity to read and analyze the decision in connection with their respective Notices to the Court. (ECF Nos. 22, 23, and 24). Moreover, Jordan's attorney was counsel for the plaintiff in *Lisowski*.

*Dist. v. United States*, 424 U.S. 800, 817 (1976)). Thus, the Third Circuit held that the district court was within its discretion in declining to remand to state court on comity grounds, even if the case includes considerations relating to state taxation.

The Court recognizes that—as Jordan's Notice points out—the decision in *Lisowski* was designated as non-precedential. It is, nevertheless, persuasive to the Court when faced with the same issue in a substantially similar case. The Court will adopt and rely upon the persuasive jurisprudence enunciated in *Lisowski*, and reject Jordan's arguments in favor of remand. Jordan's attempts to distinguish this case are unavailing. It is, with respect to both the TIA issue and the general request for comity-based remand, substantially similar to the facts and issues in *Lisowski*. Indeed, the TIA does not mandate remand because the gravamen of Jordan's claims, as pled, are that he was charged an amount that was not owed as tax. Jordan's claims "rest solely on [Petco's] allegedly improper collection of a charge that it was not authorized to take. And the mere potential for [Petco] to eventually raise a tax-based defense does not strip the District Court of jurisdiction." *Id.* at 2. Nor are there any other special considerations of state law raised in this case that would warrant the Court to decline to exercise its jurisdiction. Federal courts frequently encounter and apply issues of state law, including novel issues, when exercising their diversity jurisdiction. The Court will, therefore, follow the guidance set forth in *Lisowski* and deny the Motion to Remand.

**B. The Court will grant Petco's Motion to Compel Arbitration.**

Petco moves to compel arbitration based on an arbitration clause in the Pals Rewards Program to which Jordon twice indicated agreement and which provided him with the coupons that form the basis of his overcharge claims. Jordan does not dispute that he signed up for the program. (ECF No. 15, p. 17). Petco has represented that Jordon has earned points, and he

3

remains a member of the program. (ECF No. 11-1, p. 4). Petco's records demonstrate that Jordon signed up for the program on August 16, 2020 and, again, on August 25, 2020. (ECF No. 11-1, p. 3). To do so, Jordan completed an electronic form including his personal information. At the end of the form was a distinct click-box which said "Create Account." Just above this box it stated: "By clicking Create Account, you agree to **Petco Pals Terms & Conditions, Terms of Use,** and **Privacy Policy**." (*Id.*). The Terms of Use stated:

> **PLEASE NOTE: THESE TERMS OF USE CONTAIN AN ARBITRATION CLAUSE AND CLASS ACTION WAIVER. THE WAIVER AFFECTS HOW DISPUTES WITH THE COMPANY ARE RESOLVED. BY ACCEPTING THESE TERMS OF USE, YOU AGREE TO BE BOUND BY THIS ARBITRATION PROVISION. PLEASE READ IT CAREFULLY.**

(ECF No. 11-1, p. 6). The "Class Action Waiver; Mandatory Agreement to Arbitrate on an Individual Basis" section provided, "Any and all controversies, disputes, demands, counts, claims, or causes of action (including the interpretation and scope of this clause, and the arbitrability of the controversy, dispute, demand, counts, claim, or cause of action) between you and the Company or the Company's employees, agents, successors, or assigns, shall exclusively be settled through binding and confidential arbitration, except that you or the Company may take claims to small claims court if the dispute qualifies for hearing by such a court." (*Id.* at pp. 13-14). The arbitration provision stipulated that arbitration was only for individual claims. (*Id.*).

The Terms of Use were amended and, as of March 1, 2021, they state:

> **PLEASE NOTE: THESE TERMS OF USE CONTAIN AN ARBITRATION PROVISION WITH A CLASS ACTION WAIVER THAT AFFECTS YOUR RIGHTS. THE ARBITRATION PROVISION AFFECTS HOW DISPUTES WITH PETCO ARE RESOLVED. YOU AGREE TO BE BOUND BY THIS ARBITRATION PROVISION. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT. PLEASE READ THESE TERMS CAREFULLY.**

(*Id.* at p. 21). The "Mandatory Dispute Resolution" section now provides "that any and all controversies, disputes, demands, counts, claims, or causes of action between you and the Company, or the Company's employees, agents, affiliates, subsidiaries, successors, representatives, or assigns ("Dispute(s)"), shall be resolved through binding and confidential arbitration, except that you or the Company may elect to have a Dispute heard in small claims court if it qualifies for hearing by such a court." (*Id.* at pp. 30-31). The arbitration provision stipulated that arbitration will be only for individual claims. (*Id.* at pp. 30-32).

Jordan argues that the Motion to Compel arbitration should be denied on multiple grounds. His arguments can be distilled into three general theories: first, that the Court should remand and allow the state court to decide the motion; second, that the conduct alleged in the Complaint falls outside the scope of the arbitration clause; and third, that the arbitration agreement is unconscionable.

**1) This is the appropriate court to decide the Motion to Compel Arbitration.**

Jordan argues that this is not the appropriate Court to decide the Motion to Compel Arbitration. He presumes that the case will be remanded and contends that the state court should examine and decide whether to compel arbitration. In addition to the arguments already addressed above with respect to the Motion for Remand, Jordan somewhat circuitously argues that the Court cannot address (and grant) the Motion to Compel Arbitration because the arbitration would be only individual and, thus, fail to satisfy the jurisdictional minimum of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). Jordan's argument fails. Federal Courts routinely address motions to compel arbitration where they have jurisdiction over the case based on CAFA—even where the arbitration clause contains a class action waiver. *See Siperavage v. Uber Tech., Inc.*, Civil Action No. 20-12265, 2021 WL 2680060 (D.N.J. June 30,

2021) (compelling arbitration in case with a class-waiver where jurisdiction was provided by CAFA). There is no merit to Jordan's argument. The Court has jurisdiction over this case and it may address the issues presented in the Motion to Compel arbitration.

**2) The claims raised by Jordan fall within the scope of the arbitration agreement.**

Jordan also argues that his claims do not fall within the scope of the arbitration agreement. (*See* "the illegal in-store overcharging of consumers under the guise of collecting sales tax, and the deceptive conduct of providing in-store receipts which are capable of creating confusion and misunderstanding among consumers, are not subject to arbitration") (ECF No. 15, p. 7)). This argument falls flat.

Inasmuch as "federal law applies to the interpretation of arbitration agreements," once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court, the determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause is a matter of federal law." *China Minmetals Materials Import and Export Co., Ltd.,* 334 F.3d 274, 290 (3d Cir. 2003) (internal citations and quotation marks omitted). *See also Gay v. CreditInform,* 511 F.3d 369, 388 (3d Cir. 2007); *Green Tree Fin. Corp.,* 183 F.3d 173, 178–79 (3d Cir. 1999). In determining whether the particular dispute falls within a valid arbitration agreement's scope, "there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646,* 584 F.3d 513, 524 (3d Cir. 2009) (quoting *AT & T Techs.,* 475 U.S. 643, 650 (1986)) (internal quotation marks and citations omitted). Any doubts concerning the scope of arbitrable issues should be decided

in favor of arbitration. *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The original arbitration clause between Jordan and Petco was broad, providing "any and all controversies, disputes, demands, counts, claims, or causes of action (including the interpretation and scope of this clause, and the arbitrability of the controversy, dispute, demand, counts, claim, or cause of action) between you and the Company or the Company's employees, agents, successors, or assigns, shall exclusively be settled through binding and confidential arbitration, except that you or the Company may take claims to small claims court if the dispute qualifies for hearing by such a court." (ECF No. 11-1, pp. 13-14). Likewise, the amended arbitration clause provides, "any and all controversies, disputes, demands, counts, claims, or causes of action between you and the Company, or the Company's employees, agents, affiliates, subsidiaries, successors, representatives, or assigns ("Dispute(s)"), shall be resolved through binding and confidential arbitration, except that you or the Company may elect to have a Dispute heard in small claims court if it qualifies for hearing by such a court." (*Id.* at pp. 30-31). As explained above, Jordan agreed to be bound by these terms when he accepted the Petco Terms of Use. The Court holds that in light of the broad language of the arbitration clause, coupled with the strong federal presumption in favor of arbitration, there is no question that the claims asserted by Jordan fall within the scope of the arbitration clause.

**3) The Arbitration Agreement is not unconscionable and will be enforced.**

Jordan argues that Petco's Terms of Use are unconscionable and, therefore, should be set aside by the Court. He first makes the broad argument that the Terms of Use should be rejected because they permit only individual, rather than class, arbitration. He then focuses on specifics

7

of the Terms of Use and argues that it is an unfair adhesion contract that is procedurally and substantively unconscionable and it should not be enforced against him, the consumer.

In *AT&T Mobility LLC. v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court of the United States held that a California rule, first enunciated by the California Supreme Court in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) holding arbitration provision with class waivers to be unconscionable, was preempted by the FAA. Jordan quotes the Third Circuit's decision in *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 233 (3d Cir. 2012), for the proposition that "even after the *Concepcion* decision, Pennsylvania courts—including the Third Circuit—have continued to hold, for example that 'class action waivers are substantially unconscionable where "class action litigation is the only effective remedy such as when the high cost of arbitration compared to the minimal potential value of individual damages den[ies] every plaintiff a meaningful remedy.'" (ECF No. 15, p. 11).

Jordan is wrong. He misstates the outcome and rationale of *Quilloin*. In fact, the Third Circuit in *Quilloin* reached the exact opposite conclusion. In examining whether the decisions of Pennsylvania courts refusing to enforce arbitration clauses that bar class arbitration can withstand FAA preemption scrutiny after *Concepcion*, the Third Circuit pointed to its decision in *Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011), rejecting a similar New Jersey rule, and found that "[o]ur *Litman* ruling is directly applicable here." *Quilloin*, 673 F.3d at 233. The Third Circuit quoted *Litman*:

> We understand the holding of *Concepcion* to be both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration is desirable for unrelated reasons.

*Id.* (quoting *Litman*, 655 F.3d at 231). Contrary to the misleading citation offered by Jordan, the operative language of the Third Circuit in *Quilloin* stated:

8

> The Pennsylvania law at issue here is clearly preempted under *Concepcion* and *Litman*.[ ] The Pennsylvania law is not substantively different from the California law, which is unquestionably preempted by the FAA. Like the California law, Pennsylvania law does not render class action waivers *per se* unconscionable. Rather, Pennsylvania finds such waivers substantively unconscionable where "class action litigation is the only effective remedy" such as when "the high cost of arbitration compared with the minimal potential value of individual damages denie[s] every plaintiff a meaningful remedy." *Thibodeau*, 912 A.2d at 883–84.
>
> Like the law in *Litman*, the Pennsylvania law "seeks to impose class arbitration despite a contractual agreement for individualized arbitration" and is therefore preempted. *See id.* at 231. In fact, the Pennsylvania law is even more egregious than the New Jersey law. *See Litman*, 655 F.3d at 229 n. 5. The New Jersey rule against class action waivers applied to litigation and arbitration alike, *id.* at 229, while Pennsylvania law has often prohibited class action waivers based on their arbitration-specific context. *Id.* at 229 n. 5 (citing *Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. 2007)). Thus, the Pennsylvania law presents an even greater obstacle to the fulfillment of the FAA's purposes than does the New Jersey law, because it is exactly the type of law that "single[s] out the provisions of arbitration agreements [,]" *Harris*, 183 F.3d at 183, and that "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746.

*Quilloin*, 673 F.3d at 233 (internal footnote omitted). It is settled law that an arbitration clause is not unconscionable because it only permits individual, rather than class, arbitration.

Jordan is similarly mistaken in his contention that the arbitration clause is procedurally unconscionable. The Third Circuit explained the concept of procedural unconscionability in *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003):

> Procedural unconscionability pertains to which the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. This element is generally satisfied if the agreement constitutes a contract of adhesion. A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis.

(cleaned up) (internal citations and footnoted committed). In this case, neither the Petco Terms and Conditions, the Terms of Use (including the arbitration clauses), and the Privacy Policy are unclear or convoluted. Although in electronic rather than paper form, the arbitration clause

9

cannot be characterized as being hidden in fine print. Just above the "Create Account" button, the application specifically stated that by clicking, the Petco Pals applicant agreed to the **Petco Pals Terms & Condition, Terms of Use**, and **Privacy Policy.** (ECF No. 11-1, p. 3). These terms were in bold letters and were clearly visible and unambiguous. The Terms of Use were in all capital letters and all bold. (*Id.* at pp. 6 and 21). It unambiguously states that there is an arbitration provision and a class action waiver. Looking at the provisions individually and as a whole, the Court holds that they are clear and unambiguous.

Next, the Court must determine whether the contract is one of adhesion. While, generally, "a contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis," a mere difference in bargaining power will not render a contract unenforceable. Nor will the inclusion of an arbitration agreement in a form agreement render it unenforceable. While there is no indication that there was a right to opt-out of the arbitration agreement (or other provisions of the Terms & Conditions and/or Terms of Use) when applying for membership in the Petco Pals Rewards Program, this does not render the agreement an unenforceable contract of adhesion.

The Court's determination here is informed by jurisprudence surrounding other types of voluntary membership agreements. Courts have consistently held that agreements to participate in "voluntary sporting or recreational activities" are not contracts of adhesion because "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190–91 (Pa. 2010). "The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary

recreational activity." *Id.* at 1191. *See also Hinkal v. Pardoe*, 133 A.3d 738, 741–42 (Pa. Super. 2016) (*en banc*), *appeal denied*, 141 A.3d 481 (Pa. 2016) (citing the "thorough and well-reasoned opinion" of the trial court, which held that the plaintiff's gym membership agreement was not a contract of adhesion because exercising at a gym is a voluntary recreational activity and the plaintiff was under no compulsion to join the gym); *Urena v. LA Fitness*, Civil Action No. 20-964, 2021 WL 3209888, at *3 (E.D. Pa. July 29, 2021) (holding that liability waiver in gym membership was not unenforceable as an adhesion contract).

The Petco Pals Rewards Program is similar to the recreational memberships addressed in the cases above. "The signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich*, 2 A.3d at 1190–91. Jordan was not required to join—even make purchases at Petco. But by doing so, he realized personal benefits, such as receiving coupons (including the coupons giving rise to this case). The arbitration agreement was not part of a contract of adhesion. The Court holds, therefore, that the contract was not procedurally unconscionable.

"To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." *Quilloin*, 673 F.3d at 230 (3d Cir. 2012) (quoting *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). Without a showing of both forms of unconscionability, the arbitration clause must stand. *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 319 (E.D. Pa. 2017). Because Jordan has failed to demonstrate procedural unconscionability, it is unnecessary for the Court to determine whether the arbitration

clause in the Terms of Use of the Petco Pals Rewards Program are substantively unconscionable.[2]

Jordan has failed to demonstrate unconscionability. As such, the arbitration clause will stand and the parties will be compelled to arbitrate. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Third Circuit follows the plain language of the FAA and has unequivocally held that district courts are obligated to grant the stay until arbitration concludes. *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3rd Cir. 2004). The Court, therefore, stays, rather than dismisses, the action pending arbitration.

## CONCLUSION

And now, this 14 of September, 2022, for the reasons set forth above, Jordan's Motion for Remand will be denied. Petco's Motion to Compel Arbitration and Stay Litigation will be granted. The case will be stayed pending the arbitration proceedings. An Order of Court will follow.

BY THE COURT:

/s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

[2] Having carefully reviewed the language of the original and amended Terms of Use and the circumstances of its execution by Jordon, the Court holds that the arbitration clause is not substantively unconscionable.